TO PLAINTIFF'S ATTORNEY: PLEASE CIRCLE TYPE OF ACTION INVOLVED:
TORT - MOTOR VEHICLE TORT - CONTRACT - EQUITABLE RELIEF - OTHER

# COMMONWEALTH OF MASSACHUSETTS

HAMPDEN, ss.

SUPERIOR COURT
DEPARTMENT OF THE TRIAL COURT
CIVIL ACTION
NO 03 1079

_Jeffrey Kopyscinski_ , PLAINTIFF(S)

V.

SUMMONS

_Southworth Company_ , DEFENDANT(S)

To the above named defendant:

You are hereby summoned and required to serve upon _Kathleen A. Moore-Kocot, Esq._ _P.O. Box 142, Agawam, MA 01001_ , plaintiff's attorney, whose address is an answer to the complaint which is herewith served upon you, within 20 days after service of this summons upon you, exclusive of the day of service. If you fail to do so, judgment by default will be taken against you for the relief demanded in the complaint. You are also required to file your answer to the complaint in the office of the Clerk of this court at Springfield either before service upon the plaintiff's attorney or within a reasonable time thereafter.

Unless otherwise provided by rule 13(a), your answer must state as a counterclaim any claim which you may have against the plaintiff which arises out of the transaction or occurrence that is the subject matter of the plaintiff's claim or you will thereafter be barred from making such claim in any other action.

Witness, Suzanne V. DelVecchio, Esq., at Springfield the _____5th_____ day of _November_ in the year of our Lord two thousand three.

_[signature]_
Clerk / Magistrate

NOTES:
1. This summons is issued pursuant to Rule 4 of the Massachusetts Rules of Civil Procedure.
2. When more than one defendant is involved, the names of all such defendants should appear in the caption. If a separate summons is used for each defendant, each should be addressed to the particular defendant.

FORM No. 1

NOTICE TO DEFENDANT -- You need not appear personally in court to answer the complaint, but if you claim to have a defense, either you or your attorney must serve a copy of your written answer within 20 days as specified herein and also file the original in the Clerk's office.

# COMMONWEALTH OF MASSACHUSETTS
## SUPERIOR COURT

HAMPDEN, ss

DOCKET NO.    03  1079

////////////////////////////////////////////////////////

**JEFFREY KOPYSCINSKI**
           **Employee**

**V.**

**SOUTHWORTH COMPANY,**
           **Employer**

////////////////////////////////////////////////////////

## COMPLAINT

**PARTIES**

1.   Jeffery Kopyscinski is an individual who resides at 51 Randall Street, Agawam, MA

      01001.

2.   Southworth Company, is a corporation with its principal place of business located at

      265 Main Street, Agawam, MA 01001.

**FACTS**

3.   On or about October 9, 2000, Mr. Kopyscinski was hired as a utility worker/Box

      Forming (See Attached Exhibts #1, 2 & 3).

4.   Since October 9, 2000, Mr. Kopyscinski was trained on and worked with the box forming

      machines on third shift.

5.   Though Mr. Kopyscinski was trained on lock out/tag out procedures, he was never

      provided with a key in order to properly comply with same.

6.   Throughout Mr. Kopyscinski's employment with Southworth, he continually raised

      concerns regarding safety issues with his machine.  Safety issues raised include, but are

      not limited to:

      a).      Belt timing off;

b).    Thumb notcher breaking;

c).    Timing gears off;

d).    Machine value failed;

e).    Constant jams;

f).    Sensors not properly aligned;

g).    Machine 'Stop' button not bolted and/or secured down; AND

h).    Hot glue mechanism would fail to properly dispense.

7.    Mr. Kopyscinski's supervisors were Kevin Lizzotte, Immediate Supervisor, and Jimmy Mango, Warehouse Supervisor.

8.    When Mr. Kopyscinski raised issues involving safety and problems with operating his machine, he would first contact Kevin Lizzotte then he would normally contact Maintenance. It was not unusual for Mr. Kopyscinski to request maintenance assistance up to once or twice a night due to these issues.

9.    When Mr. Kopyscinski raised these safety issues with Southworth he was usually asked by his supervisor, "What do you want me to do about it"? On a number of occasions Maintenance refused to even come in to look at the machine.

10.    On or about April 10, 2002, Mr. Kopyscinski contacted Kevin Lizzotte to inform him that the thumb notch was jamming again and Kevin Lizzotte informed Mr. Kopyscinski that, "It wasn't his problem". Mr. Kopyscinski then contacted Maintenance and they refused to come in to correct the problem. Mr. Kopyscinski then hits the "Stop" button on the machine (which was not bolted to the floor, nor secured in any manner) to disengage the machine prior to attempting to lubricate the machine. Upon placing his hand into the machine, 800 lbs. of pressure came down onto Mr. Kopyscinski's hand and

but for the can he was holding in his hand, he would have crushed his entire hand rather than just a finger.

11.    On or about April 11, 2002, Maintenance came in and changed the sensors on Mr. Kopyscinski's machine and bolted the "Stop" button into the floor.  It was later determined that when Mr. Kopyscinski hit the "Stop" button, it only moved the box forward and the machine never disengaged.

12.    Had the "Stop" button been properly secured to the floor, the machine would have been shut down and Mr. Kopyscinski's injury could have been prevented.

13.    Had Mr. Kopyscinski been provided a key (as required) for lock out/tag out, this safety step, too, could have prevented Mr. Kopyscinski's injury.

14.    The Employer completed a Form 101 filed with the Department of Industrial Accident Board on or about May 20, 2002.   The Employer's accident report identifies the injury as occurring when Mr. Kopyscinski was spraying lube into his machine.  The Employer fails to report the machine was malfunctioning, OSHA violations, and various safety procedures were not in place to have prevented this injury. (See Ex. 4)

15.    Upon returning on or about April 17, 2002, Mr. Kopyscinski was informed by co-workers that management wanted to get rid of him.

16.    One of the reasons Mr. Kopyscinski is given as to why he is being target by management is because he is raising too many safety issues all the time.

17.    On or about July 21, 2002 Mr. Kopyscinski was transferred to first shift due to the elimination of third shift.

18.   On or about August 1, 2002, Mr. Kopyscinski was transferred (at the request of Jim Mango) to second shift as an operator.

19.   During August 2002, Mr. Kopyscinski put in a bid for the second shift operator. Ms. Alison Strolis informed Mr. Kopyscinski he could have the position if he wanted it since he ( Mr. Kopyscinski) was the most experienced on that machine and knew how to run it.

20.   During August 2002, Mr. Jay Mutti complained that Mr. Kopyscinski received the operator's position on second shift that he also bid on. Though Mr. Kopyscinski was more qualified and senior than Mr. Mutti, Mr. Kopyscinski voluntarily stepped down (with management's approval) and took the assistant operator's position once held by Mr. Mutti.

21.   On or about June 1, 2002, Mr. Kopyscinski receives his evaluation and suddenly is given low ratings in areas he excelled in prior to his April injury. The areas he is suddenly given low ratings include, but are not limited to the following: safety rules and procedures, responsibility to work as a team member, ensuring proper set ups for job specs, and properly making machine adjustments. (See Ex. 5, 6, & 7).

22.   Mr. Mango informs Mr. Kopyscinski during his June 1, 2002 evaluation that his evaluation was low because of his work accident. Mr. Kopyscinski indicates on his response to his evaluation that he objected to his injury having any bearing on the outcome of his evaluation.

23.   On or about November 18, 2002, Mr. Kopyscinski goes into work and is informed by the shift operator (he is replacing) that the machine table keeps rising so they had placed a block of wood behind the paper to operate the machine. Both the prior shift operator and Mr. Kopyscinski contacted Maintenance to fix the machine and they refused to come in.

24.   On or about November 18, 2002, Mr. Kopyscinski attempted to adjust the machine, but was unsuccessful. Mr. Kopyscinski then informed his supervisor, Jason Mutti, of the problem and that he considered it a serious safety issue and he was not going to risk another injury working under these conditions.

25.   Mr. Kopyscinski requests to be placed on a different job until the issue can be corrected and management refuses to accommodate this request.

26.   Jason Mutti contacts Jimmy Mango the Warehouse Supervisor (while in front of Mr. Kopyscinski) and informs him of Mr. Kopyscinski's concerns. Within minutes of this conversation, Mr. Kopyscinski is sent home without any explanation. Mr. Kopyscinski complies.

27.   Mr. Mutti directs another operator (Cindy) to take over Mr. Kopyscinski's machine however, she is unable to due to the machine remaining inoperable. (See Ex. 9)

28.   Mr. Kopyscinski's machine will remain shut down for the remaining portion of the shift for the exact issues raised by Mr. Kopyscinski.

29.   Mr. Kopyscinski is later told by co-workers that management labeled him a "cry baby" for having raised this safety issue, and Mr. Kopyscinski was considered to have abandoned his job for refusing to work on this machine. ( See Ex. 8, 9, 10, & 11)

30.   On or about November 19, 2002, Mr. Kopyscinski is informed he is suspended for job abandonment. Mr. Kopyscinski contacts Southworth every day for two weeks requesting permission to return to work.

31.   While on suspension, Mr. Kopyscinski is informed by co-workers that his position was being advertised in the paper.

32.    After a two week suspension, Mr. Kopyscinski is contacted by Southworth to return to work. Upon his return to work Mr. Kopyscinski is informed that Southworth is "restructuring" and his position has been eliminated. (See Ex. 1)

33.    At no time has Mr. Kopyscinski received any disciplinary action while employed at Southworth. In addition, Mr. Kopyscinski position (alleged to have been restructured) still remains in the same capacity as when he operated the machine. In addition, based on his seniority with the company, other staff should have been laid off prior to him.

## COUNT I : WRONGFUL DISCHARGE

34.    The facts set forth are hereby incorporated in full with the same force and effect as if they had been individually realleged herein.

35.    In violation of M.G.L. ch. 152 Sections 28 & 75(b), Defendant terminated Mr. Kopyscinski's employment (under the pretext of a layoff) for having reported on-going safety issues, machine malfunctions and for having filed a workers compensation claim.

36.    In violation of OSHA regulations, Defendant terminated Mr. Kopyscinski's employment (under the pretext of a layoff) for having reported on-going safety issues, machine malfunctions and for having filed a workers compensation claim.

37.    To date and continuing, Mr. Kopyscinski's box forming machine position continues to exist and has never been eliminated as Defendants indicated to Mr. Kopyscinski.

38.    Prior to his layoff, Mr. Kopyscinski had no disciplinary action in his personnel file and prior to his injury he was rated above average on his evaluations.

39.    As a direct result of Defendant's actions, Mr. Kopyscinski was wrongfully discharged and injured as a result of these actions.

## COUNT II:  RETALIATION

40.     The facts set forth are hereby incorporated in full with the same force and effect as if they had been individually realleged herein.

41.     Defendant, through these actions, have both subjectively and objectively retaliated against Mr. Kopyscinski for having filed a workers' compensation claim, raised OSHA violations and reported machine malfunctions to management. .

42.     Mr. Kopyscinski was ridiculed, disciplined and terminated as a direct and proximate cause of his raising safety issues and filing a workers compensation claim.

43.     As a direct and proximate cause of Defendant's actions, Mr. Kopyscinski was injured.

## COUNT III:  VIOLATION OF PUBLIC POLICY

44.     The facts set forth are hereby incorporated in full with the same force and effect as if they had been individually realleged herein.

45.     As a direct result of Defendant's serious and wilful misconduct, Mr. Kopyscinski was injured. Defendant refused to properly address Mr. Kopyscinski's safety concerns thereby allowing Mr. Kopyscinski to be exposed to an unreasonable risk of bodily harm that Defendant clearly knew if not corrected, there was a high probability that substantial harm could occur. See O'Leary Case, 367 Mass. 108 (1975), Restatement 2d.: Torts, s. 500 (1965)

46.     Defendants, through these actions have violated public policy by retaliating against and terminating Mr. Kopyscinski for asserting his legal right See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 149 (1989), and for reporting what the law requires and refusing to do what the law forbids. See Hobson v. McLean Hospital Corp., 401 Mass. 413, 416 (1988) (enforcing safety laws).

47. Defendant's retaliatory actions were prolonged and systemic, ultimately ending in removing Mr. Kopyscinski from his employ under the pretext of a layoff.

48. As a direct and proximate cause of Defendant's actions, Mr. Kopyscinski was injured.

## COUNT IV: INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS

49. The facts set forth are hereby incorporated in full with the same force and effect as if they had been individually realleged herein.

50. Mr. Kopyscinski was subjected to on-going harassment and humiliating comments and treatment by Defendants.

51. Defendant's actions were prolonged and systemic, ultimately ending in removing Mr. Kopyscinski from his employ under the pretext of a layof.

52. Defendant refused to properly address Mr. Kopyscinski's safety concerns thereby allowing Mr. Kopyscinski to be exposed to an unreasonable risk of bodily harm that Defendants clearly knew if not corrected there was a high probability that substantial harm could occur. See O'Leary Case, 367 Mass. 108 (1975), Restatement 2d.: Torts, s. 500 (1965)

53. In violation of M.G.L. ch. 152 Sections 28 & 75(b), Defendant retaliated against, humiliated and terminated Mr. Kopyscinski's employment (under the pretext of a layoff) for having reported on-going safety issues, machine malfunctions and for having filed a workers compensation claim.

54. In violation of OSHA regulations, Defendant retaliated against, humiliated and terminated Mr. Kopyscinski's employment (under the pretext of a layoff) for having reported on-going safety issues, machine malfunctions and for having filed a workers compensation claim.

55. As a direct and proximate cause of Defendant's actions, Mr. Kopyscinski was injured.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff prays that this Court grant the greatest total of recovery available under the counts raised in this complaint;

56.    Damages including but not limited to emotional distress, loss of wages and benefits

57.    Punitive Damages,

58.    Reasonable Attorney fees and costs;  AND

. 59.    Any, and all relief that the Court deems just and appropriate.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues herein which may be tried by right of jury.

Respectfully submitted,

DATE: ~~October 24, 2003~~  November 4, 2003

By Plaintiff's attorney,

Kathleen A. Moore-Kocot, Esq.

P.O. Box 162

Agawam, MA 01001

413-786-1184 (tel)

413-786-6030 (fax)

BBO#631622

Page 9 of 9

EXH 1

Kopyscinski, Jeffery

# CONFIDENTIAL
## *Personnel* ENVELO-FILE®

STATUS: FULL TIME ✓   PART TIME ___   TEMPORARY ___   PRINT EMPLOYEE'S NAME ON

ADDRESS 51 Randall St
NO.        STREET
CITY Agawam, MA   STATE   ZIP 01001   TELEPHONE 786-420

ADDRESS ___
NO.   STREET   CITY   STATE   ZIP   TELEPHONE

ADDRESS ___
NO.   STREET   CITY   STATE   ZIP   TELEPHONE

ADDRESS ___
NO.   STREET   CITY   STATE   ZIP   TELEPHONE

IN EMERGENCY NOTIFY ___
NO.   STREET   NAME   CITY   STATE   ZIP   TELEPHONE

**YEARS OF SERVICE**

| 1 | 2 | 3 | 4 | 5 | 6 | 7 | 8 | 9 | 10 | 11 | 12 | 13 | 14 | 15 | 16 | 17 | 18 | 19 | 20 | 21 | 22 | 23 | 24 | 25 | 25+ |
|---|---|---|---|---|---|---|---|---|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|----|-----|

DATE OF BIRTH: 9/7/74   SEX: M ✓   F ___   SOCIAL SECURITY NUMBER 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

I-9 DOCUMENTATION COMPLETED: YES ✓   NO ___

EDUCATION:   GRADE SCHOOL ___   HIGH SCHOOL ___   COLLEGE ___   SPECIAL TRAINING ___

POST EMPLOYMENT EDUCATION/TRAINING ___

COMPANY TRAINING ___

## EMPLOYMENT HISTORY

| DATES FROM | TO | POSITION | DEPARTMENT | RATE OF PAY AMOUNT | PER | GRADE OF WORK | REASON FOR CHANGE OR TERMINATION |
|---|---|---|---|---|---|---|---|
| 3/3/00 |  | Performing - 3rd |  | 10.00 | hr | + .60 |  |
| 7/10 |  | Performing Operator - 3.5 | 11.46 | + .60 |  |  |  |
| 9/01 |  |  | 11.54 | + .60 |  |  |  |
| 1/01 |  |  | 12.44 | 8 |  |  |  |
| 4/02 |  | Termination - Reorganizing |  |  |  |  |  |

# SOUTHWORTH COMPANY

## INTER-OFFICE COMMUNICATIONS

DATE:      October 9, 2000

TO:        All Employees

FROM:      Human Resources Department

RE:        New Employee

**************************************************************************

Effective Monday, October 9th, Jeffrey Kopycinski has accepted the position of Utility Worker in Box Forming on the 3rd shift.

Please join us in welcoming Jeffrey to our team.

## Southworth Company

July 14, 2000

There is an opening in the Agawam Converting Department for:

**POSITION TITLE: UTILITY WORKER, BOX-FORMING**

**SHIFT: 3rd**

**GRADE: 10**                     **PAY RANGE:** $10.02 - $12.82

### JOB DESCRIPTION

This position is primarily responsible for performing various manual and mechanical duties in support of box forming operations. Duties include but are not limited to: Perform assigned tasks at several stations on a rotating basis; assemble box halves and align on table, count designated number of boxes and move to string tying machine, actuate pedal to tie stacks, place tied stacks on adjacent skids, move skid to staging area utilizing hand pallet truck. As assigned, set up mitering machine to cut wrapper material. Lift designated number of sheets from skid and place on machine, make cuts using foot lever, return finished stock to table. Follow all safety rules and regulations. Maintain work area in a clean and orderly condition. Record production/productivity data on required sheets and forward to appropriate personnel.

### QUALIFICATIONS

- Minimum of 3 months of experience in related field preferred.
- Strong verbal communication skills needed.
- Knowledge of fractions and decimals; simple use of measuring instruments required; use of reports, forms, where some interpretation is required and involving basic knowledge skills.
- Visual acuity to product details is needed.
- Manual coordination and dexterity in the assembly of boxes and operation of simple machinery is essential.
- Light physical demand will be needed for this position. Prior experience with hand pallet truck helpful.

**REPORTS TO:** James Mango, Converting Group Leader

Send letter of interest to Janet McGuffey Friday, July 21, 2000.

\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\* This is a replacement position. \*\*\*\*\*\*\*\*\*\*\*\*\*\*\*\*

FORM 101

**The Commonwealth of Massachusetts**
**Department of Industrial Accidents – Department 101**
600 Washington Street – 7th Floor, Boston, Massachusetts 02111
Info. Line 800-323-3249 ext. 470 in Mass.  Outside Mass. - 617-727-4900 ext. 470
http://www.state.ma.us/dia



DIA USE ONLY
EX. 4

# EMPLOYER'S FIRST REPORT OF INJURY OR FATALITY

THIS FORM MUST BE FILED BY THE *EMPLOYER* IN THE EVENT OF AN INJURY THAT RESULTS IN DEATH
OR FIVE OR MORE CALENDAR DAYS OF TOTAL OR PARTIAL INCAPACITY FROM EARNING WAGES.
*INSTRUCTIONS AND CODES ON THE REVERSE SIDE - Please Print Legibly or Type - Unreadable forms will be returned.*

**EMPLOYEE**

| 1. Employee's Name (Last, First, MI): Kopyscinsk Jeffrey | 2. Home Telephone Number: (413) 786-4204 | 3. Social Security Number*: 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 | 4. Sex: ☒ M ☐ F |
|---|---|---|---|

5. Home Address (No., Street, City, State & Zip Code): 51 Randall Street Agawam MA 01001

| 6. Marital Status: ☐ M ☒ S | 7. No. of Dependent: |
|---|---|

| 8. Date of Hire (mm/dd/yyyy): 10/19/2000 | 9. Date of Birth (mm/dd/yyyy): 9/7/1974 | 10. Average Weekly Wage: $ ___ ☐ Estimated ☐ Actual |
|---|---|---|

**EMPLOYER**

11. Employer's Name: Southworth Company

12. Federal Tax I.D. Number: 04-1853890

13. Employer's Address (No., Street, City, State & Zip Code): 265 Main Street Agawam MA 01001

14. Employer's Telephone Number: (413) 759-1000 Ext 450

16. Workers' Compensation Insurance Carrier and Tel. No. (NOT LOCAL AGENT/ADMINISTRATOR): Associated Industries Mass Mutual Insurance Company

15. Industry Code (See Reverse Side): 26

17. W.C. Policy Number: WMZ 8002823012002

| 18. Self-Insured? ☐ Yes ☒ No | 19. Business Type : ☐ Service ☐ Wholesale ☒ Mfg. ☐ Retail ☐ Other ___ |
|---|---|

If Yes, Self-Insurer Number:

**INJURY INFORMATION**

**20. DATE OF INJURY (mm/dd/yyyy):**

| 21. Was Employee Injured on Employer's Premises? ☒ Yes ☐ No | 22. Location of Injury if not on Employer's Premises: |
|---|---|

| 23. FIRST day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy): 04/12/2002 | 24. FIFTH day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy): 04/16/2002 |
|---|---|

| 25. If Employee has Died, Date of Death (mm/dd/yyyy): ___ | 26. Source of Injury (Chemicals, Machinery, etc.): Machinery |
|---|---|

27. Briefly Describe How Injury/Exposure Occurred and Body Part(s) involved: Typing was spraying lube on notch cutter of the forming machine when it came down on right index finger

| 28. Person to Whom Injury was Reported (list position): James Manye Converting Mgr. | 29. Date Reported (mm/dd/yyyy): 04/11/2002 | 30. Date Reported as work related (mm/dd/yyyy): 04/11/2002 |
|---|---|---|

| 31. Injury Code(s) a. 170 to body part b. ___ to body part c. ___ to body part | Body Part Code(s) a. 340 b. ___ c. ___ | 32. Witness(es) to Injury - Give Full Name(s), if none state as such: Bo Forming Operator No Statement |
|---|---|---|

| 33. Has Employee Returned to Work? ☒ Yes ☐ No | 34. Date Employee Returned to Work(mm/dd/yyyy): 04/17/2002 |
|---|---|

| 35. Employee's Regular Occupation: Foil Stamping Operator | 36. Has Employee Returned to Regular Occupation: ☒ Yes ☐ No |
|---|---|

| 37. EMPLOYER'S Name (SEE INSTRUCTIONS ON REVERSE SIDE): Alison F. Steele | 38. Title: Human Resources Manager |
|---|---|

| 39. EMPLOYER'S Signature (SEE INSTRUCTIONS ON REVERSE SIDE): | 40. Date Prepared (mm/dd/yyyy): 5/16/02 |
|---|---|

*Disclosure of Social Security Number is Voluntary.  It will aid in the processing of your report.        Form 101 - Revised 8/2001 - Reproduce as needed.

**THIS FORM DOES NOT CONSTITUTE AN EMPLOYEE'S CLAIM FOR BENEFITS UNDER WORKERS' COMPENSATION.**

## SOUTHWORTH COMPANY

Jeffery Kopyscinski
10/9/2000

## PERFORMANCE PLANNING AND EVALUATION

Name_____          Position _Asst. Box Forming Oper._
Date of Hire_____

Reports To _Jim Wood_          Department_Converting_
Period Reviewed _6/1/02_

**Program Purpose:**
As employees, most of us want to know: "what's expected of me?,"
and "how might I do better".  Performance planning and evaluation
are important for both employees and their supervisors.  For
both, this process is an opportunity to discuss job performance
and job requirements in order to help employees do well or even
better in their present jobs, to establish goals to be reached in
a given time period, and to help identify employees' needs for
future development.

**Instructions:**

Before the
meeting

Prior to the employee's review meeting, Personnel
will provide the employee a copy of the job
description performance plan and evaluation form
requesting that the employee evaluate his/her own
performance by completing the evaluation portion
of the form.  An appointment is then made for the
review meeting. The supervisor also prepares for
the employee's evaluation review by completing a
copy of the evaluation document in advance of the
meeting.

During the
review meeting

The performance review is the time for both
parties to compare and discuss their ratings; to
set goals and agree on actions that each can do
to improve the employee's performance. A
comparison of the two evaluations is conducted
and the performance level determined. The
supervisor and employee then agree on the major
goals to be worked on during the coming review
period, and the actions to be taken to maintain,
improve and develop the employee. Both parties
should make additions and deletions to the job
description to reflect change in duties and
responsibilities and the performance plan as
appropriate, if any have occurred or are needed.

After the
review meeting

The employee and supervisor each keep a copy of
the document. The supervisor sends a copy to the
individual in charge of Personnel for review and
addition to the employee's file.

## PERFORMANCE PLANNING AND EVALUATION

List the important responsibilities, indicators of performance,
goals for the position and describe how they are to be performed.
Performance indicator expectations should be expressed in terms
of quality, quantity, method and manner of performance,
timeliness, and cost where possible.

As a organization we continue to strive for the highest level of
performance achievable.  It is for that reason we call our job
performance expectations "Indicators of Excellence".

## Assistant Box Forming Operator

### INDICATORS OF EXCELLENCE

1. Responsibility: Machine set up                    (25%)    Rating
      Consistently demonstrates knowledge and
      understanding of machine operations.                     3
      Accurately performs all assigned machine set
      ups and adjustments.                                     3
      Properly and efficiently installs dies and form
      blocks.                                                  3
      Consistently ensures all stations are properly
      set up to job specification.                             2

·68)

Overall rating 2.75
Comments:_____

_____

_____

_____

2. Responsibility: Machine operation          (25%)     Rating
   Efficiently loads stock onto machines.                   3
   Consistently ensures adequate stock is staged.           3
   Effectively monitors operation.                          3
   Promptly notifies operator of problems or any
   out of spec situation.                                   3
   Promptly and accurately makes any required
   machine adjustments.                                     2
   Effectively fills in for operator or other
   positions in absences.                                   3

Overall rating 2·8
Comments:_____
_____
_____
_____
_____


3. Responsibility: Machine maintenance        (10%)     Rating
   Accurately performs lubrication jobs as may
   be assigned.                                             3
   Accurately performs cleaning operations.                 3
   Effectively assists with repair or maintenance
   as required.                                             2

Overall rating_____3_____
Comments:_____
_____
_____
_____
_____

ORGANIZATION WIDE EXPECTATIONS

1. Responsibility: Team Cooperation/Effort     (5%)     Rating
       Willingly accepts and accomplishes
       responsibilities.                                    2
       Demonstrates professionalism to co-workers.          3
       Willingly assists co-workers and others.             3
       Works to resolve problems.                           3
       Willingly accepts special assignments.               3
       Consistently observes company procedures, policies
       and rules.                                           2

   Overall rating  2.6
   Comments:_____
   _____
   _____
   _____

2. Responsibility: Attendance                 (15%)    Rating
       Meets attendance policy of organization.            3
       Meets tardiness policy.                             3

   Overall rating  3
   Comments:_____
   _____
   _____
   _____
   _____

3. Responsibility: Work Area and Safety Habits  (5%)   Rating
       Work areas are clean and orderly.                   3
       Appearance meets company requirements.              3
       Consistently follows safety rules/regulations.      1
       Properly utilizes safety equipment.                 2

   Overall Rating  2.25
   Comments:_____
   _____
   _____
   _____

4. Responsibility: Job Knowledge                    (5%)    Rating
    Consistently demonstrates product knowledge.        3
    Effectively refines technical skill.                3
    Effectively keeps abreast of customer needs.        3

Overall Rating_____3_____
Comments:_____
_____
_____
_____

5. Responsibility: Judgment, initiative             (5%)    Rating
    Carefully studies facts and options before
    making decisions.                                   2
    Consistently assigns proper priority to jobs.       3
    Can be consistently relied on to take action on
    own initiative.                                     2
    Consistently offers improvements to procedures
    through appropriate suggestions.                    4

Overall Rating_____3_____
Comments:_____
_____
_____
_____

6. Responsibility: Flexibility and leadership  (5%)  Rating
    Always receptive to new ideas and willing to
    accept change.                                      2
    Effectively fills in for other positions.           4
    Consistently motivates other toward goals.          3
    Consistently gains co-worker confidence and
    respect.                                            3
    Demonstrates leadership skills.                     2
    Effectively communicates with co-workers and
    management.                                         3
    Is exemplary in work skill and competency.          3

Overall Rating__2.8_____
Comments:_____
_____
_____

## PERFORMANCE DEFINITIONS

MEETS
EXPECTATIONS
3
The incumbent meets performance expectations for all responsibilities and goals and is fully successful, performs in a good, competent manner. This is the expected and usual level for most individuals. The employee is recognized as a particular asset to the department.

CONTINUOUSLY
EXCEEDS
EXPECTATIONS
5
The employee's performance is clearly exceptional in comparison to expectations. The employee consistently exceeds goals and has provided innovative ideas contributing to the success of the department. All responsibilities reflect high standards of achievement.

EXCEEDS
EXPECTATIONS
4
The employee always meets performance expectations and frequently exceeds expectations for several responsibilities.  The contribution of the employee is beyond expectations and is highly valued in reaching new levels of department achievements.

IMPROVEMENT
NEEDED TO
MEET
EXPECTATIONS
2
The employee meets performance expectations at minimally acceptable level.  Some responsibilities may require extra direction by the supervisor, or the supervisor may find it necessary to avoid assigning the more difficult tasks to the employee.

UNSATISFACTORY
1
Performance is below acceptable levels for one or more major responsibilities.  The individual requires counseling and recognition that improved performance within a prescribed period is a condition for continued employment.