Commonwealth of Massachusetts
HAMPDEN SUPERIOR COURT
Case Summary
Civil Docket

## HDCV2003-01079
### Kopyscinski v Southworth Company

| | | | | | | |
|---|---|---|---|---|---|---|
| **File Date** | 11/05/2003 | **Status** | Disposed: transfered to other court (dtrans) | | | |
| **Status Date** | 01/12/2004 | **Session** | B - Civil B - CtRm 5 | | | |
| **Origin** | 1 | **Case Type** | B22 - Employment Discrimination | | | |
| **Lead Case** | | **Track** | F | | | |
| **Service** | 02/03/2004 | **Answer** | 04/03/2004 | **Rule12/19/20** | 04/03/2004 | |
| **Rule 15** | 04/03/2004 | **Discovery** | 08/31/2004 | **Rule 56** | 09/30/2004 | |
| **Final PTC** | 10/30/2004 | **Disposition** | 12/29/2004 | **Jury Trial** | Yes | |

### PARTIES

**Plaintiff**
Jeffrey Kopyscinski
Active 11/05/2003

**Private Counsel 631622**
Kathleen A Moore-Kocot
PO Box 162
Agawam, MA 01001
Phone: 413-786-1184
Fax: 413-786-6030
Active 11/05/2003 Notify

**Defendant**
Southworth Company
Service pending 11/05/2003

**Private Counsel 632962**
Susan G Fentin
Skoler Abbott & Presser PC
1 Monarch Place
Suite 2000
Springfield, MA 01144
Phone: 413-737-4753
Fax: 413-787-1941
Active 01/12/2004 Notify

### ENTRIES

| Date | Paper | Text |
|---|---|---|
| 11/05/2003 | 1.0 | Complaint & civil action cover sheet filed |
| 11/05/2003 | | Origin 1, Type B22, Track F. |
| 01/12/2004 | | Case REMOVED this date to US District Court of Massachusetts |

### EVENTS

| Date | Session | Event | Result |
|---|---|---|---|
| 11/08/2004 | Civil B - CtRm 5 | Status: Review Annual Fee | |
| | | Send notice of Anniversary Fee | |

A TRUE COPY
OF THE DOCKET MINUTES
IN WITNESS WHEREOF, hereunto
... the seal
of the Superior Court...
of Hampden ... affixed on this
14th day of January, 2004

Attest: _____
Deputy Assistant Clerk

| CIVIL ACTION COVER SHEET | DOCKET NO(S) 03 1079 | Trial Court of Massachusetts Superior Court Department County: Hampden |
|---|---|---|

**PLAINTIFF(S)**: Jeffrey Kopyscinski

**DEFENDANT(S)**: Southworth Company

**ATTORNEY, FIRM NAME, ADDRESS AND TELEPHONE**: Kathleen A. Moore-Kocot, P.O. Box 162, Agawam MA 01001 (413) 786-1184

Board of Bar Overseers number: 631-622

**ATTORNEY (if known)**: Sue Fentin, Skoler, Abbott & Presser, Suite 2000, One Monarch Place, Springfield MA 01144

**Origin code and track designation**

HAMPDEN COUNTY SUPERIOR COURT FILED NOV - 5 2003

Place an x in one box only:
- ☒ 1. F01 Original Complaint
- ☐ 2. F02 Removal to Sup.Ct. C.231,s.104 (Before trial) (F)
- ☐ 3. F03 Retransfer to Sup.Ct. C.231,s.102C (X)
- ☐ 4. F04 District Court Appeal c.231, s. 97 &104 (After trial) (X)
- ☐ 5. F05 Reactivated after rescript; relief from judgment/Order (Mass.R.Civ.P. 60) (X)
- ☐ 6. E10 Summary Process Appeal (X)

**TYPE OF ACTION AND TRACK DESIGNATION (See reverse side)**

| CODE NO. | TYPE OF ACTION (specify) | TRACK | IS THIS A JURY CASE? |
|---|---|---|---|
| B22 | Employment Disc. | (F) | (X) Yes ( ) No |

The following is a full, itemized and detailed statement of the facts on which plaintiff relies to determine money damages. For this form, disregard double or treble damage claims; indicate single damages only.

**TORT CLAIMS**
(Attach additional sheets as necessary)

A. Documented medical expenses to date:
  1. Total hospital expenses ........................................ $ ........
  2. Total Doctor expenses ......................................... $ ........
  3. Total chiropractic expenses ................................... $ ........
  4. Total physical therapy expenses ............................... $ ........
  5. Total other expenses (describe) ............................... $ ........
  Subtotal $ ........
B. Documented lost wages and compensation to date .................. $ ........
C. Documented property damages to date ............................. $ ........
D. Reasonably anticipated future medical and hospital expenses ..... $ ........
E. Reasonably anticipated lost wages ............................... $ ........
F. Other documented items of damages (describe)
  $ ........
G. Brief description of plaintiff's injury, including nature and extent of injury (describe)
  Wrongful Discharge in violation of M.G.L. ch 152 §75(b), Public Policy + in Retaliation for filing a wcomp claim & raising OSHA violations. Plaintiff was terminated under the pretext of a job elimination/ restructuring decision by Defendant.
  TOTAL $ 75,000+

**CONTRACT CLAIMS**
(Attach additional sheets as necessary)

Provide a detailed description of claim(s):

TOTAL $ 75,000+

PLEASE IDENTIFY, BY CASE NUMBER, NAME AND COUNTY, ANY RELATED ACTION PENDING IN THE SUPERIOR COURT DEPARTMENT

"I hereby certify that I have complied with the requirements of Rule 5 of the Supreme Judicial Court Uniform Rules on Dispute Resolution (SJC Rule 1:18) requiring that I provide my clients with information about court-connected dispute resolution services and discuss with them the advantages and disadvantages of the various methods."

true copy Attest
Signature of Attorney of Record: Kathleen A. Moore-Kocot  DATE: 11/5/03

AOTC-6 mtc005-11/99
A.O.S.C. 1-2000

Tanya Marlow CPT
Deputy Assistant Clerk

COMMONWEALTH OF MASSACHUSETTS
SUPERIOR COURT

HAMPDEN, ss                                    DOCKET NO.   **03 1079**

////////////////////////////////////////////////////////////

**JEFFREY KOPYSCINSKI**
**Employee**
V.

**SOUTHWORTH COMPANY,**
**Employer**

HAMPDEN COUNTY
SUPERIOR COURT
**FILED**
NOV - 5 2003

*[signature]*
CLERK-MAGISTRATE

////////////////////////////////////////////////////////////

## COMPLAINT

**PARTIES**

1. Jeffery Kopyscinski is an individual who resides at 51 Randall Street, Agawam, MA 01001.

2. Southworth Company, is a corporation with its principal place of business located at 265 Main Street, Agawam, MA 01001.

**FACTS**

3. On or about October 9, 2000, Mr. Kopyscinski was hired as a utility worker/Box Forming (See Attached Exhibts #1, 2 & 3).

4. Since October 9, 2000, Mr. Kopyscinski was trained on and worked with the box forming machines on third shift.

5. Though Mr. Kopyscinski was trained on lock out/tag out procedures, he was never provided with a key in order to properly comply with same.

6. Throughout Mr. Kopyscinski's employment with Southworth, he continually raised concerns regarding safety issues with his machine. Safety issues raised include, but are not limited to:

   a).   Belt timing off;

Page 1 of 9

       b).     Thumb notcher breaking;

       c).     Timing gears off;

       d).     Machine value failed;

       e).     Constant jams;

       f).     Sensors not properly aligned;

       g).     Machine 'Stop' button not bolted and/or secured down; AND

       h).     Hot glue mechanism would fail to properly dispense.

7. Mr. Kopyscinski's supervisors were Kevin Lizzotte, Immediate Supervisor, and Jimmy Mango, Warehouse Supervisor.

8. When Mr. Kopyscinski raised issues involving safety and problems with operating his machine, he would first contact Kevin Lizzotte then he would normally contact Maintenance. It was not unusual for Mr. Kopyscinski to request maintenance assistance up to once or twice a night due to these issues.

9. When Mr. Kopyscinski raised these safety issues with Southworth he was usually asked by his supervisor, "What do you want me to do about it"? On a number of occasions Maintenance refused to even come in to look at the machine.

10. On or about April 10, 2002, Mr. Kopyscinski contacted Kevin Lizzotte to inform him that the thumb notch was jamming again and Kevin Lizzotte informed Mr. Kopyscinski that, "It wasn't his problem". Mr. Kopyscinski then contacted Maintenance and they refused to come in to correct the problem. Mr. Kopyscinski then hits the "Stop" button on the machine (which was not bolted to the floor, nor secured in any manner) to disengage the machine prior to attempting to lubricate the machine. Upon placing his hand into the machine, 800 lbs. of pressure came down onto Mr. Kopyscinski's hand and

but for the can he was holding in his hand, he would have crushed his entire hand rather than just a finger.

11. On or about April 11, 2002, Maintenance came in and changed the sensors on Mr. Kopyscinski's machine and bolted the "Stop" button into the floor. It was later determined that when Mr. Kopyscinski hit the "Stop" button, it only moved the box forward and the machine never disengaged.

12. Had the "Stop" button been properly secured to the floor, the machine would have been shut down and Mr. Kopyscinski's injury could have been prevented.

13. Had Mr. Kopyscinski been provided a key (as required) for lock out/tag out, this safety step, too, could have prevented Mr. Kopyscinski's injury.

14. The Employer completed a Form 101 filed with the Department of Industrial Accident Board on or about May 20, 2002. The Employer's accident report identifies the injury as occurring when Mr. Kopyscinski was spraying lube into his machine. The Employer fails to report the machine was malfunctioning, OSHA violations, and various safety procedures were not in place to have prevented this injury. (See Ex. 4)

15. Upon returning on or about April 17, 2002, Mr. Kopyscinski was informed by co-workers that management wanted to get rid of him.

16. One of the reasons Mr. Kopyscinski is given as to why he is being target by management is because he is raising too many safety issues all the time.

17. On or about July 21, 2002 Mr. Kopyscinski was transferred to first shift due to the elimination of third shift.

18. On or about August 1, 2002, Mr. Kopyscinski was transferred (at the request of Jim Mango) to second shift as an operator.

19. During August 2002, Mr. Kopyscinski put in a bid for the second shift operator. Ms. Alison Strolis informed Mr. Kopyscinski he could have the position if he wanted it since he ( Mr. Kopyscinski) was the most experienced on that machine and knew how to run it.

20. During August 2002, Mr. Jay Mutti complained that Mr. Kopyscinski received the operator's position on second shift that he also bid on. Though Mr. Kopyscinski was more qualified and senior than Mr. Mutti, Mr. Kopyscinski voluntarily stepped down (with management's approval) and took the assistant operator's position once held by Mr. Mutti.

21. On or about June 1, 2002, Mr. Kopyscinski receives his evaluation and suddenly is given low ratings in areas he excelled in prior to his April injury. The areas he is suddenly given low ratings include, but are not limited to the following: safety rules and procedures, responsibility to work as a team member, ensuring proper set ups for job specs, and properly making machine adjustments. (See Ex. 5, 6, & 7).

22. Mr. Mango informs Mr. Kopyscinski during his June 1, 2002 evaluation that his evaluation was low because of his work accident. Mr. Kopyscinski indicates on his response to his evaluation that he objected to his injury having any bearing on the outcome of his evaluation.

23. On or about November 18, 2002, Mr. Kopyscinski goes into work and is informed by the shift operator (he is replacing) that the machine table keeps rising so they had placed a block of wood behind the paper to operate the machine. Both the prior shift operator and Mr. Kopyscinski contacted Maintenance to fix the machine and they refused to come in.

24. On or about November 18, 2002, Mr. Kopyscinski attempted to adjust the machine, but was unsuccessful. Mr. Kopyscinski then informed his supervisor, Jason Mutti, of the problem and that he considered it a serious safety issue and he was not going to risk another injury working under these conditions.

25. Mr. Kopyscinski requests to be placed on a different job until the issue can be corrected and management refuses to accommodate this request.

26. Jason Mutti contacts Jimmy Mango the Warehouse Supervisor (while in front of Mr. Kopyscinski) and informs him of Mr. Kopyscinski's concerns. Within minutes of this conversation, Mr. Kopyscinski is sent home without any explanation. Mr. Kopyscinski complies.

27. Mr. Mutti directs another operator (Cindy) to take over Mr. Kopyscinski's machine however, she is unable to due to the machine remaining inoperable. (See Ex. 9)

28. Mr. Kopyscinski's machine will remain shut down for the remaining portion of the shift for the exact issues raised by Mr. Kopyscinski.

29. Mr. Kopyscinski is later told by co-workers that management labeled him a "cry baby" for having raised this safety issue, and Mr. Kopyscinski was considered to have abandoned his job for refusing to work on this machine. ( See Ex. 8, 9, 10, & 11)

30. On or about November 19, 2002, Mr. Kopyscinski is informed he is suspended for job abandonment. Mr. Kopyscinski contacts Southworth every day for two weeks requesting permission to return to work.

31. While on suspension, Mr. Kopyscinski is informed by co-workers that his position was being advertised in the paper.

32. After a two week suspension, Mr. Kopyscinski is contacted by Southworth to return to work. Upon his return to work Mr. Kopyscinski is informed that Southworth is "restructuring" and his position has been eliminated. (See Ex. 1)

33. At no time has Mr. Kopyscinski received any disciplinary action while employed at Southworth. In addition, Mr. Kopyscinski position (alleged to have been restructured) still remains in the same capacity as when he operated the machine. In addition, based on his seniority with the company, other staff should have been laid off prior to him.

**COUNT I: WRONGFUL DISCHARGE**

34. The facts set forth are hereby incorporated in full with the same force and effect as if they had been individually realleged herein.

35. In violation of M.G.L. ch. 152 Sections 28 & 75(b), Defendant terminated Mr. Kopyscinski's employment (under the pretext of a layoff) for having reported on-going safety issues, machine malfunctions and for having filed a workers compensation claim.

36. In violation of OSHA regulations, Defendant terminated Mr. Kopyscinski's employment (under the pretext of a layoff) for having reported on-going safety issues, machine malfunctions and for having filed a workers compensation claim.

37. To date and continuing, Mr. Kopyscinski's box forming machine position continues to exist and has never been eliminated as Defendants indicated to Mr. Kopyscinski.

38. Prior to his layoff, Mr. Kopyscinski had no disciplinary action in his personnel file and prior to his injury he was rated above average on his evaluations.

39. As a direct result of Defendant's actions, Mr. Kopyscinski was wrongfully discharged and injured as a result of these actions.

**COUNT II: RETALIATION**

40. The facts set forth are hereby incorporated in full with the same force and effect as if they had been individually realleged herein.

41. Defendant, through these actions, have both subjectively and objectively retaliated against Mr. Kopyscinski for having filed a workers' compensation claim, raised OSHA violations and reported machine malfunctions to management.

42. Mr. Kopyscinski was ridiculed, disciplined and terminated as a direct and proximate cause of his raising safety issues and filing a workers compensation claim.

43. As a direct and proximate cause of Defendant's actions, Mr. Kopyscinski was injured.

**COUNT III: VIOLATION OF PUBLIC POLICY**

44. The facts set forth are hereby incorporated in full with the same force and effect as if they had been individually realleged herein.

45. As a direct result of Defendant's serious and wilful misconduct, Mr. Kopyscinski was injured. Defendant refused to properly address Mr. Kopyscinski's safety concerns thereby allowing Mr. Kopyscinski to be exposed to an unreasonable risk of bodily harm that Defendant clearly knew if not corrected, there was a high probability that substantial harm could occur. See O'Leary Case, 367 Mass. 108 (1975), Restatement 2d.: Torts, s. 500 (1965)

46. Defendants, through these actions have violated public policy by retaliating against and terminating Mr. Kopyscinski for asserting his legal right See Smith-Pfeffer v. Superintendent of the Walter E. Fernald State School, 404 Mass. 145, 149 (1989), and for reporting what the law requires and refusing to do what the law forbids. See Hobson v. McLean Hospital Corp., 401 Mass. 413, 416 (1988) (enforcing safety laws).

47. Defendant's retaliatory actions were prolonged and systemic, ultimately ending in removing Mr. Kopyscinski from his employ under the pretext of a layoff.

48. As a direct and proximate cause of Defendant's actions, Mr. Kopyscinski was injured.

**COUNT IV: INTENTIONAL/NEGLIGENT INFLICTION OF EMOTIONAL DISTRESS**

49. The facts set forth are hereby incorporated in full with the same force and effect as if they had been individually realleged herein.

50. Mr. Kopyscinski was subjected to on-going harassment and humiliating comments and treatment by Defendants.

51. Defendant's actions were prolonged and systemic, ultimately ending in removing Mr. Kopyscinski from his employ under the pretext of a layof.

52. Defendant refused to properly address Mr. Kopyscinski's safety concerns thereby allowing Mr. Kopyscinski to be exposed to an unreasonable risk of bodily harm that Defendants clearly knew if not corrected there was a high probability that substantial harm could occur. See O'Leary Case, 367 Mass. 108 (1975), Restatement 2d.: Torts, s. 500 (1965)

53. In violation of M.G.L. ch. 152 Sections 28 & 75(b), Defendant retaliated against, humiliated and terminated Mr. Kopyscinski's employment (under the pretext of a layoff) for having reported on-going safety issues, machine malfunctions and for having filed a workers compensation claim.

54. In violation of OSHA regulations, Defendant retaliated against, humiliated and terminated Mr. Kopyscinski's employment (under the pretext of a layoff) for having reported on-going safety issues, machine malfunctions and for having filed a workers compensation claim.

55. As a direct and proximate cause of Defendant's actions, Mr. Kopyscinski was injured.

## PRAYERS FOR RELIEF

WHEREFORE, the plaintiff prays that this Court grant the greatest total of recovery available under the counts raised in this complaint;

56. Damages including but not limited to emotional distress, loss of wages and benefits

57. Punitive Damages,

58. Reasonable Attorney fees and costs;   AND

59. Any, and all relief that the Court deems just and appropriate.

## JURY DEMAND

The Plaintiff demands a trial by jury on all issues herein which may be tried by right of jury.

Respectfully submitted,                    DATE: ~~October 24, 2003~~ November 4, 2003

By Plaintiff's attorney,

*[signature]*

Kathleen A. Moore-Kocot, Esq.

P.O. Box 162

Agawam, MA 01001

413-786-1184 (tel)

413-786-6030 (fax)

BBO#631622

A true copy,

Attest:

*[signature]*

Deputy Assistant Clerk

EX 1

# CONFIDENTIAL Personnel ENVELO-FILE®

YEARS OF SERVICE: 1 2 3 4 5 6 7 8 9 10 11 12 13 14 15 16 17 18 19 20 21 22 23 24 25 OVER 25

DATE OF BIRTH: 9/7/74     SEX: M ✓  F ___    SOCIAL SECURITY NUMBER: 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

I-9 DOCUMENTATION COMPLETED: YES ✓  NO ___

EDUCATION: GRADE SCHOOL ___  HIGH SCHOOL ___  COLLEGE ___  SPECIAL TRAINING ___

POST EMPLOYMENT EDUCATION/TRAINING: _____

COMPANY TRAINING: _____

STATUS: FULL TIME ✓  PART TIME ___  TEMPORARY ___    PRINT EMPLOYEE'S NAME ON

ADDRESS: NO. 51 STREET Randall St  CITY Agawam, MA  STATE  ZIP 01001  TELEPHONE 786-420?

ADDRESS: NO. ___ STREET ___ CITY ___ STATE ___ ZIP ___ TELEPHONE ___

ADDRESS: NO. ___ STREET ___ CITY ___ STATE ___ ZIP ___ TELEPHONE ___

IN EMERGENCY NOTIFY: NO. ___ STREET ___ NAME ___ CITY ___ STATE ___ ZIP ___ TELEPH

ADDRESS: NO. ___ STREET ___ CITY ___ STATE ___ ZIP ___ TELEPH

## EMPLOYMENT HISTORY

| DATES FROM | TO | POSITION | DEPARTMENT | RATE OF PAY AMOUNT | PER | GRADE OF WORK | REASON FOR CHANGE OR TERMINATION |
|---|---|---|---|---|---|---|---|
| 00 |  | Performing - 3rd | Bot Performing Operator - 3rd | 10.02 | hr | +.60 |  |
| 3/1/01 |  |  |  | 11.46 |  | +.60 |  |
| 6/1/01 |  |  |  | 11.94 |  | +.60 |  |
| 6/02 |  |  |  | 12.44 |  | 8 |  |
|  | 11/06/02 | Termination - Reorganizing |  |  |  |  |  |

Termination letter

# SOUTHWORTH COMPANY

## INTER-OFFICE COMMUNICATIONS

DATE:     October 9, 2000

TO:       All Employees

FROM:     Human Resources Department

RE:       New Employee

****************************************************************

Effective Monday, October 9th, Jeffrey Kopycinski has accepted the position of Utility Worker in Box Forming on the 3rd shift.

Please join us in welcoming Jeffrey to our team.

Southworth Company

July 14, 2000

There is an opening in the Agawam Converting Department for:

**POSITION TITLE: UTILITY WORKER, BOX-FORMING**

**SHIFT: 3rd**

**GRADE: 10**                                           **PAY RANGE: $10.02 - $12.82**

## JOB DESCRIPTION

This position is primarily responsible for performing various manual and mechanical duties in support of box forming operations. Duties include but are not limited to: Perform assigned tasks at several stations on a rotating basis; assemble box halves and align on table, count designated number of boxes and move to string tying machine, actuate pedal to tie stacks, place tied stacks on adjacent skids, move skid to staging area utilizing hand pallet truck. As assigned, set up mitering machine to cut wrapper material. Lift designated number of sheets from skid and place on machine, make cuts using foot lever, return finished stock to table. Follow all safety rules and regulations. Maintain work area in a clean and orderly condition. Record production/productivity data on required sheets and forward to appropriate personnel.

## QUALIFICATIONS

- Minimum of 3 months of experience in related field preferred.
- Strong verbal communication skills needed.
- Knowledge of fractions and decimals; simple use of measuring instruments required; use of reports, forms, where some interpretation is required and involving basic knowledge skills.
- Visual acuity to product details is needed.
- Manual coordination and dexterity in the assembly of boxes and operation of simple machinery is essential.
- Light physical demand will be needed for this position. Prior experience with hand pallet truck helpful.

**REPORTS TO:** James Mango, Converting Group Leader

Send letter of interest to Janet McGuffey Friday, July 21, 2000.

********************* This is a replacement position. ****************

FORM 101  **Commonwealth of Massachusetts**
Department of Industrial Accidents – Department 101
600 Washington Street – 7th Floor, Boston, Massachusetts 02111
Info. Line 800-323-3249 ext. 470 in Mass. Outside Mass. - 617-727-4900 ext. 470
http://www.state.ma.us/dia


DIA USE ONLY
EX.4

## EMPLOYER'S FIRST REPORT OF INJURY OR FATALITY

THIS FORM MUST BE FILED BY THE *EMPLOYER* IN THE EVENT OF AN INJURY THAT RESULTS IN DEATH OR FIVE OR MORE CALENDAR DAYS OF TOTAL OR PARTIAL INCAPACITY FROM EARNING WAGES.
*INSTRUCTIONS AND CODES ON THE REVERSE SIDE* - Please Print Legibly or Type - Unreadable forms will be returned.

**EMPLOYEE**

1. Employee's Name (Last, First, MI): Kopyscinski, Jeffrey
2. Home Telephone Number: (413) 786-4209
3. Social Security Number: 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
4. Sex: ☒ M ☐ F
5. Home Address: 51 Randall Street, Agawam MA 01001
6. Marital Status: ☐ M ☒ S
7. No. of Dependents: —
8. Date of Hire (mm/dd/yyyy): 10/19/2000
9. Date of Birth (mm/dd/yyyy): 9/7/1974
10. Average Weekly Wage: $ ☐ Estimated ☐ Actual

**EMPLOYER**

11. Employer's Name: Southworth Company
12. Federal Tax I.D. Number: 04-1853590
13. Employer's Address: 265 Main Street, Agawam MA 01001
14. Employer's Telephone Number: (413) 759-1200 Ext 450
15. Industry Code: 26
16. Workers' Compensation Insurance Carrier and Tel. No.: Associated Industries of Mass Mutual Insurance Company
17. W.C. Policy Number: WMZ 80028230120002
18. Self-Insured? ☐ Yes ☒ No
19. Business Type: ☐ Service ☐ Wholesale ☒ Mfg. ☐ Retail ☐ Other

**INJURY INFORMATION**

20. DATE OF INJURY (mm/dd/yyyy):
21. Was Employee Injured on Employer's Premises? ☒ Yes ☐ No
22. Location of Injury if not on Employer's Premises:
23. FIRST day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy): 04/12/2002
24. FIFTH day of Total or Partial Incapacity to Earn Wages (mm/dd/yyyy): 04/16/2002
25. If Employee has Died, Date of Death: —
26. Source of Injury: Machinery
27. Briefly Describe How Injury/Exposure Occurred and Body Part(s) involved: Jeffrey was spraying lube on notch cutter of bar forming machine when it came down on right index finger.
28. Person to Whom Injury was Reported: James Mango, Coating Mgr.
29. Date Reported (mm/dd/yyyy): 04/11/2002
30. Date Reported as work related (mm/dd/yyyy): 04/11/2002
31. Injury Code(s): a. 170  Body Part Code(s): a. 340
    b. ___ to body part b. ___
    c. ___ to body part c. ___
32. Witness(es) to Injury: Bar forming operator - No statement
33. Has Employee Returned to Work? ☒ Yes ☐ No
34. Date Employee Returned to Work: 04/17/2002
35. Employee's Regular Occupation: Bar Forming Operator
36. Has Employee Returned to Regular Occupation: ☒ Yes ☐ No
37. EMPLOYER'S Name: Alison F. Strelis
38. Title: Human Resources Manager
39. EMPLOYER'S Signature: [signed]
40. Date Prepared: 5/16/02

*Disclosure of Social Security Number is Voluntary. It will aid in the processing of your report.   Form 101 - Revised 8/2001 - Reproduce as needed.
**THIS FORM DOES NOT CONSTITUTE AN EMPLOYEE'S CLAIM FOR BENEFITS UNDER WORKERS' COMPENSATION.**

## SOUTHWORTH COMPANY

Jeffery Kopyscinski       **PERFORMANCE PLANNING AND EVALUATION**
10/9/2000

Name_____        Position **Asst. Box Forming Oper.**
Date of Hire_____

Reports To _Jim W_____            Department **Converting**
Period Reviewed _6/4/02_

Program Purpose:
As employees, most of us want to know: "what's expected of me?," and "how might I do better". Performance planning and evaluation are important for both employees and their supervisors. For both, this process is an opportunity to discuss job performance and job requirements in order to help employees do well or even better in their present jobs, to establish goals to be reached in a given time period, and to help identify employees' needs for future development.

Instructions:

| | |
|---|---|
| Before the meeting | Prior to the employee's review meeting, Personnel will provide the employee a copy of the job description performance plan and evaluation form requesting that the employee evaluate his/her own performance by completing the evaluation portion of the form. An appointment is then made for the review meeting. The supervisor also prepares for the employee's evaluation review by completing a copy of the evaluation document in advance of the meeting. |
| During the review meeting | The performance review is the time for both parties to compare and discuss their ratings; to set goals and agree on actions that each can do to improve the employee's performance. A comparison of the two evaluations is conducted and the performance level determined. The supervisor and employee then agree on the major goals to be worked on during the coming review period, and the actions to be taken to maintain, improve and develop the employee. Both parties should make additions and deletions to the job description to reflect change in duties and responsibilities and the performance plan as appropriate, if any have occurred or are needed. |
| After the review meeting | The employee and supervisor each keep a copy of the document. The supervisor sends a copy to the individual in charge of Personnel for review and addition to the employee's file. |

**PERFORMANCE PLANNING AND EVALUATION**

List the important responsibilities, indicators of performance, goals for the position and describe how they are to be performed. Performance indicator expectations should be expressed in terms of quality, quantity, method and manner of performance, timeliness, and cost where possible.

As a organization we continue to strive for the highest level of performance achievable. It is for that reason we call our job performance expectations "Indicators of Excellence".

**Assistant Box Forming Operator**

INDICATORS OF EXCELLENCE

1. Responsibility: Machine set up                    (25%)     Rating
    Consistently demonstrates knowledge and
    understanding of machine operations.                        3
    Accurately performs all assigned machine set
    ups and adjustments.                                        3
    Properly and efficiently installs dies and form
    blocks.                                                     3
    Consistently ensures all stations are properly
    set up to job specification.                                2

 ·68)

Overall rating 2.75
Comments: _____
_____
_____
_____
_____

2. Responsibility: Machine operation                (25%)    Rating
   Efficiently loads stock onto machines.            3
   Consistently ensures adequate stock is staged.    3
   Effectively monitors operation.                   3
   Promptly notifies operator of problems or any
   out of spec situation.                            3
   Promptly and accurately makes any required
   machine adjustments.                              ~~3~~ 2
   Effectively fills in for operator or other
   positions in absences.                            3

Overall rating 2.8
Comments: _____
_____
_____
_____
_____


3. Responsibility: Machine maintenance              (10%)    Rating
   Accurately performs lubrication jobs as may
   be assigned.                                      3
   Accurately performs cleaning operations.          3
   Effectively assists with repair or maintenance
   as required.                                      3

Overall rating  3
Comments: _____
_____
_____
_____
_____

ORGANIZATION WIDE EXPECTATIONS

1. Responsibility: Team Cooperation/Effort     (5%)     Rating
   Willingly accepts and accomplishes
   responsibilities.                                      2
   Demonstrates professionalism to co-workers.            3
   Willingly assists co-workers and others.               3
   Works to resolve problems.                             3
   Willingly accepts special assignments.                 3
   Consistently observes company procedures, policies
   and rules.                                             2

   ·/3
   Overall rating  2.6
   Comments:_____
   _____
   _____

2. Responsibility: Attendance     (15%)     Rating
   Meets attendance policy of organization.               3
   Meets tardiness policy.                                3

   ·%
   Overall rating  3
   Comments:_____
   _____
   _____
   _____

3. Responsibility: Work Area and Safety Habits  (5%)  Rating
   Work areas are clean and orderly.                      3
   Appearance meets company requirements.                 3
   Consistently follows safety rules/regulations.         1
   Properly utilizes safety equipment.                    2

   °//₂
   Overall Rating  2.25
   Comments:_____
   _____
   _____

4. Responsibility: Job Knowledge               (5%)    Rating
    Consistently demonstrates product knowledge.        3
    Effectively refines technical skill.                3
    Effectively keeps abreast of customer needs.        3

'15  Overall Rating        3
Comments: _____
_____
_____


5. Responsibility: Judgment, initiative         (5%)    Rating
    Carefully studies facts and options before
    making decisions.                                    3
    Consistently assigns proper priority to jobs.       3
    Can be consistently relied on to take action on
    own initiative.                                      2
    Consistently offers improvements to procedures
    through appropriate suggestions.                     4

'15  Overall Rating        3
Comments: _____
_____
_____


6. Responsibility: Flexibility and leadership   (5%)    Rating
    Always receptive to new ideas and willing to
    accept change.                                       2
    Effectively fills in for other positions.            4
    Consistently motivates other toward goals.           3
    Consistently gains co-worker confidence and
    respect.                                             3
    Demonstrates leadership skills.                      2
    Effectively communicates with co-workers and
    management.                                          3
    Is exemplary in work skill and competency.           3

'/14  Overall Rating   2.8
Comments: _____
_____
_____